**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| DAKDT, Inc., F&C Services, Inc., | ) | |
| Nitro-Green, Inc., and Wade M. Grove, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiffs, | ) | **MOTION TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | |
| All Green Acquisition Corporation | ) | |
| d/b/a Nitro-Green Professional Lawn | ) | Case No. 1:06-cv-076 |
| & Tree Care, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is the Defendant's Motion to Dismiss for lack of subject matter jurisdiction

and personal jurisdiction filed on September 20, 2006. The Plaintiffs filed a response in opposition

to the motion on April 30, 2007. On May 5, 2007, the Defendant filed a reply brief. For the reasons

set forth below, the motion is denied.

I.       **BACKGROUND**

The plaintiffs, DAKDT, Inc., F&C Services Inc., Nitro-Green, Inc., and Wade M. Grove,

filed a complaint on September 20, 2006 against the defendant, All Green Acquisition Corp. d/b/a/

Nitro-Green Inc., (All Green). The plaintiffs own "Nitro-Green Professional Lawn and Tree Care"

business franchises. Over a span of several years, each Plaintiff separately signed license

agreements that effectively created a franchise system, with each Plaintiff being a franchisee. In

1996, All Green purchased the Nitro-Green franchise.

The Plaintiffs contend that All Green breached the terms of its license agreements and

request damages for breach of contract, attorney's fees, and a declaratory judgment terminating the

1

licensee agreements. See Docket No. 1, pp. 7-9.  The Plaintiffs contend that by 2005, All Green had effectively ceased all business operations; maintained no staff, headquarters, or products; discontinued any sales, training, or marketing efforts to assist its franchisees; and as such maintained no franchise system. The Plaintiffs argue that they continued to pay royalties and fees associated with the license agreements even after All Green stopped performing its obligations under the agreement.

The Plaintiffs assert that royalties paid since 2003 should be refunded.

In their complaint, the Plaintiffs seek damages for breach of contract totaling an aggregate of $89,418.90. See Docket No. 1, p. 8.  This figure represents the total royalty payments paid by all Plaintiffs over a three-and-a-half year time period in which the Plaintiffs allege All Green had stopped performing under the license agreements. On April 9, 2007, All Green filed a motion to dismiss for lack of jurisdiction, asserting that the Plaintiffs failed to meet the amount-in-controversy requirement needed to sustain a diversity of citizenship case, and that the Court lacks personal jurisdiction over the Defendant.

On April 30, 2007, the Plaintiffs filed a response where they ascribe money values for the declaratory judgment claim and for attorney's fees in an effort to establish an alternate basis for the amount-in-controversy requirement.  Plaintiff DAKDT, a Nevada corporation, seeks total damages of $76,500 ($14,250 for breach of contract, $52,250 for the declaratory judgment claim, and $10,000 in attorney's fees).  See Docket No. 17, pg. 4-5.  Plaintiff F&C Services, a California corporation, seeks total damages of $104,500 ($21,000 for breach of contract damages, $73,500 for the declaratory judgment, and $10,000 in attorney's fees).  Plaintiff Nitro-Green, an Idaho corporation, claims total damages of $34,750 ($9,000 breach of contract damages, $15,750 for the declaratory

judgment, and $10,000 in attorney's fees).  Plaintiff Wade Grove, a Colorado corporation, claims total damages of $135,668.90 ($45,168.90 for breach of contract damages, $80,500 for the declaratory judgment claim, and $10,000 in attorney's fees).  Id.

It appears that the Plaintiffs, in order to determine a monetary value for their declaratory judgment claim, multiplied the expected future costs associated in fulfilling their obligations under the license agreements by the years remaining in their respective 20-year licensing agreements. These obligations consist primarily of annual fixed fees and royalty fees.

The license agreements for Plaintiffs DAKDT, Nitro-Green and Wade Grove all contain forum-selection clauses that require litigation in Bismarck, North Dakota.  F&C Services has entered into three separate license agreements with All Green and joined together the claims arising out of these license agreements. Two of F&C's license agreements require litigation in North Dakota, while one of the license agreement calls for litigation in Troy, Michigan.

## II.   LEGAL DISCUSSION

On April 9, 2007, All Green filed a motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction.  Specifically, All Green contends that the Plaintiffs have failed to meet the amount-in-controversy requirement mandating that damages for a diversity case exceed $75,000 pursuant to 28 U.S.C. § 1332(a), and that All Green does not have sufficient minimum contact with the state of North Dakota for the purposes of personal jurisdiction.

### A.   SUBJECT MATTER JURISDICTION

Federal district courts have original jurisdiction over civil actions where all plaintiffs are of diverse citizenship from all defendants and where the amount in controversy exceeds the sum or

value of $75,000.  28 U.S.C. § 1332(a)(1).  Whether a plaintiff satisfies the $75,000 amount in

controversy requirement is a jurisdictional issue for the Court to decide.  Trimble v. Asarco, Inc.,

232 F.3d 946, 959 (8th Cir. 2000).  However, it must appear to a legal certainty that the claim is for

less than the jurisdictional amount to justify dismissal.  St. Paul Mercury Indem. Co., v. Red Cab

Co., 303 U.S. 283, 288 (1938).  The Eighth Circuit recently summarized the inquiry for determining

whether the amount-in-controversy requirement had been satisfied.

> We have held that "a complaint that alleges the jurisdictional amount in good faith
> will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appear[s]
> to a legal certainty that the claim is really for less than the jurisdictional amount.'"
> Larkin v. Brown, 41 F.3d 387, 388 (8th Cir. 1994) (quoting St. Paul Mercury Indem.
> Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).  If the defendant challenges the
> plaintiff's allegations of the amount in controversy, then the plaintiff must establish
> jurisdiction by a preponderance of the evidence.  McNutt v. General Motors
> Acceptance Corp., 298 U.S. 178, 188-89 (1936); see also Federated Mut. Implement
> and Hardware Ins. Co. v. Steinheider, 268 F.2d 734, 737-38 (8th Cir. 1959).

Kopp v. Kopp, 280 F.3d 883, 884-85 (8th Cir. 2002).  Because All Green has challenged the

Plaintiffs' contention that their claims meet the amount-in-controversy requirement, the Plaintiffs

have the burden of proving, by a preponderance of the evidence, that their claims exceed $75,000.

In their complaint, the Plaintiffs contend that the amount-in-controversy is attained by

aggregating all four of the Plaintiff's breach of contract claims for damages which amount to

$89,418.90. Tthe Plaintiffs alternatively claim that the requisite amount-in-controversy is met

because three of the four Plaintiffs' claims individually exceed $75,000 when the breach of contract

claims are combined with the damage claims associated with the declaratory judgment action and

the recoverable attorney's fees.  The Plaintiffs further argue that jurisdiction over Nitro-Green,

whose breach of contract damages, declaratory judgment damages, and attorney's fees only total

4

$34,750, is proper through the exercise of supplemental jurisdiction.  Complete diversity of the parties is not contested.

### 1.    AGGREGATION OF DAMAGES

It is well-settled that when several plaintiffs assert separate and distinguishable demands in a single suit, the amount involved in each must independently satisfy the amount-in-controversy requirement.  Crenshaw v. Great Central Ins. Co., 482 F. 2d 1255, 1259 (8th Cir. 1973). An exception to the rule exists where several plaintiffs unite to enforce a single title or right by bringing a class action, their claims can be aggregated for purposes of determining whether the amount-in-controversy requirement for the exercise of diversity jurisdiction has been satisfied.  28. U.S.C. § 1332. The Eighth Circuit has held that separate contract-holders could not aggregate damages to meet the amount-in-controversy requirement because separate contracts did not constitute a single liability, even when the contracts involved mutual ownership of property.  See Kessler v. Nat'l Enter., Inc., 347 F.3d 1076, 1079-80 (8th Cir. 2003).

Each Plaintiff in this dispute entered into separate and distinct license agreements with Nitro-Green Professional Lawn & Tree Care at different times and containing different terms.  Each licensee asserts an individual claim based upon that licensee's agreement.  Because the Plaintiffs are not uniting to enforce a single title or right, they cannot aggregate their damages in order to satisfy the requisite jurisdictional amount.  The Court finds that because the Plaintiffs' claims involve separate contracts, the damages set forth in the Plaintiff's complaint in the amount of $89,418.90 cannot be aggregated and do not satisfy the amount-in-controversy requirement.

## 2.     INDIVIDUAL DAMAGE CLAIMS

In the alternative, the Plaintiffs designate separate damage amounts for each individual Plaintiff, each consisting of damages for breach of contract, damages associated with the declaratory judgment action, and attorney's fees.   The Plaintiffs contend that the amount-in-controversy requirement is met through the total of these amounts.

### i.     BREACH OF CONTRACT DAMAGES

Although separate plaintiffs cannot aggregate their contract claims for purposes of satisfying the amount-in-controversy requirement, it is clear that F&C Services can join all damages under its three contracts with All Green in order to meet the jurisdictional amount-in-controversy requirement. See Fed. R. Civ. P. 18(a).

The Plaintiffs request breach of contract damages and specifically allege that each Plaintiff paid fees to All Green over a three-and-a-half year period, during which time All Green had allegedly discontinued all support of the Nitro-Green franchise system and breached its duties under the licensing agreements.   The value of the claims for breach of contract damages are undisputed for jurisdictional purposes.   The Court finds that the Plaintiffs have carried their burden with respect to the claims for breach of contract damages and the contract damages are to be included in the amount-in-controversy calculations.

### ii.    DECLARATORY JUDGMENT CLAIM

The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties "[i]n a case of actual controversy."   28 U.S.C. § 2201. The Declaratory Judgment Act was

6

designed to permit a potential defendant to obtain a declaration of its rights and obligations under a contract without having to breach that contract and incur unnecessary damages.

The Declaratory Judgment Act does not, by itself, confer subject matter jurisdiction on federal courts.  See 28 U.S.C. § 2201(a).  Thus, the Declaratory Judgment Act cannot be used as an independent basis for subject matter jurisdiction, and in a diversity case those separate requirements must still be met.  See Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles, 977 F.2d 1224, 1227 (8th Cir. 1992).  The Plaintiffs contend that the basis for jurisdiction in this case is 28 U.S.C. § 1332.  Diversity of citizenship is not disputed and the jurisdictional dispute only involves whether the amount in controversy exceeds $75,000 as required by the statute.

"In actions seeking declaratory or injunctive relief, it is well-established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).  In determining the value, for amount-in-controversy purposes, the Eighth Circuit has generally viewed the value from the perspective of the plaintiff.  Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809, 814-15 (8th Cir. 1969), Smith v. American States Preferred Ins. Co., 249 F.3d 812, 813-14 (8th Cir. 2001)(relying solely on plaintiffs' viewpoint in determining amount-in-controversy).

One method of measurement that has been used to determine the "value of the litigation" for amount-in-controversy purposes in the Eighth Circuit is the pecuniary risk principle, where the court looks to the "pecuniary result to either party which the judgment would directly produce."  Hatridge, 415 F.2d at 815; see also Hunt, 432 U.S. at 347 (stating the value of the object of litigation is measured by losses that would follow from enforcement); NCMIC Ins. Co v. Sammon, No. Civ. 05-456RKHJSM, 2005 WL 2648687, at *3 (D. Minn. Oct. 17, 2005).

7

Other circuits have also adopted the pecuniary risk principle to determine whether the amount-in-controversy requirement has been met.  See America's Money Line, Inc. v. Coleman, 360 F.2d 782, 786 (7th Cir. 2004)(adhering to the rule that the value for amount-in-controversy purposes is the pecuniary result that would flow to the plaintiff or defendant from the court's action);see also City of Moore v. Atchison, Topeka & Santa Fe Ry. Co., 699 F.2d 507, 509 (10th Cir. 1983)(holding that value should be determined by looking at the pecuniary effect an adverse declaration will have on either party).

The measurement for the pecuniary risk is a factual inquiry.  In determining the full value of a contract for purposes of determining the amount-in-controversy, courts in other circuits have recognized that future payments that may become payable should be included if the validity of the entire contract is in question.  See Russ v. Unum Life Ins. Co., 442 F. Supp. 2d 193, 197-198 (D.N.J., 2006).  Courts in the Eighth Circuit have similarly determined the value of declaratory judgment damages in cases involving contracts using the pecuniary risk principle to include the value of the license fees that the plaintiffs are obligated by contract to pay to the defendant throughout the term of the agreement.   See Eisler v. Medicine Shoppe Intern Inc., No. 405CV2272JCH, 2006 WL 415953, at *2 (E.D. Mo. Feb. 21, 2006).

In this case, the "objects of the litigation" are the license agreements between each Plaintiff and All Green.  The Plaintiffs argue that to determine the value of their declaratory judgment claim, the Court should look to how much the Plaintiffs would be obligated to pay in license and royalty fees if the agreements were enforced.  The life of each licensing agreement is 20 years, and the Plaintiffs have included in their individual declaratory judgment claims the annual fees that are required under the licensing agreement multiplied by the remaining years left in the contract.

8

The Court is of the opinion that the value of the claim should be determined by looking at the pecuniary effect that an adverse declaration will have on either party.  If there were an adverse result for the Plaintiffs, and a decision reached not to grant their prayer for declaratory relief to terminate the licensing agreements, the Plaintiffs would be obligated to pay any unpaid royalty fees and also perform any continuing obligations contained within their particular 20-year licensing agreement.  The Plaintiffs argue that in order to comply with the obligations set forth in each of their individual licensing agreements over the term of the agreement, it would cost DAKDT the sum of $52,250; F&C the sum of $73,500; Nitro-Green the sum of $15,750; and Wade Grove the total sum of $80,500.   These costs would flow directly from an adverse declaration by the Court and such costs are reasonably calculated based upon past fees and the life of the licensing agreements.  In essence, these amounts are the value of the "object of the litigation" as viewed from the perspective of each plaintiff. Based on the foregoing, the Court finds that the possible future costs to the Plaintiffs associated with fulfilling the terms of their licensing agreements are properly included in determining the value of the declaratory judgment claim for purposes of calculating the amount-in-controversy.

### iii.      ATTORNEY'S FEES

Attorney's fees are generally excluded from calculations in determining the amount-in-controversy for jurisdictional  purposes. See 28 U.S.C. § 1332(a). This general rule has evolved in an attempt to ensure that issues heard in federal courts are substantial and that plaintiffs cannot meet jurisdictional requirements by merely asserting inflated attorney's fees.   However, an exception exists that allows for the addition of attorney's fees in jurisdictional calculations when those attorney's fees are contemplated in the contract in the event of a breach, or if they are provided for

by statute.  See 28 U.S.C. § 1332(a); see also Springstead v. Crawfordville State Bank, 231 U.S. 541, 542 (1913); Galloway v. Retail Sales East, Inc., 653 F. Supp. 708, 709 (W.D. Pa. 1987)(stating that attorney's fees resulting in a breach of contract and contemplated in that contract are to be included in amount-in-controversy calculations). The Eighth Circuit has similarly upheld that attorney's fees should be included in the calculation of the amount-in-controversy. Capitol Indemnity Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992).

While attorney's fees can be computed for amount-in-controversy purposes if specifically designated by contract, attorney's fees must still be reasonable.  See Perma Glass Corp. v. Sasak Corp., 718 F. Supp. 742, 743 (E.D. Mo. 1989)(holding that attorney's fees could be considered for amount-in-controversy purposes because it was not clear to a legal certainty that fees were unreasonable); see also Ross v. Inter-Ocean Ins. Co., 693 F.2d 659, 661 (7th Cir. 1982)(holding where a litigant has a right based on contract to an award of attorney's fees if he prevails in litigation, a estimate of reasonable attorney's fees can be included in amount-in-controversy calculations).

Each of the Plaintiffs' individual licensing agreements contains a provision that sets forth that in the event of a breach, the successful party shall be entitled to receive its costs, including reasonable attorney's fees.  See Docket No.1-2, p. 21; 1-3, p. 21; 1-5, p. 21; 1-6, p.21; 1-7, p. 12. Although Plaintiffs' counsel did not supply a calculation of the attorney's fees incurred to date, the Plaintiffs did supply an affidavit of Jennifer Gokenbach, a licensed attorney specializing in franchise claims, who estimated that the attorney's fees incurred would be in excess of $10,000 for each Plaintiff.  See Docket No. 17-2, p. 1-2.

10

While the Court is hesitant to find $40,000 in attorney's fees to be reasonable at this preliminary state, it recognizes the economic realities of litigation and takes into account Ms. Gokenbach's estimate that litigation of this nature will likely exceed $10,000 per plaintiff. This appears to be a conservative estimate of the attorney's fees to be incurred per plaintiff. Even if the Court were to find the claim for attorney's fees to be unreasonable, F & C Services and Wade Grove's claims for damages in the breach of contract/declaratory judgment action exceed $75,000 and meet the amount-in-controversy requirement. In light of Ms. Gokenbach's estimate for the cost of litigating this dispute, and the fact that the Court cannot state with certainty that $10,000 or more in attorney's fees for each Plaintiff is unreasonable, the Court finds that attorney's fees for each Plaintiff in the amount of $10,000 is appropriate and should be included in the calculation of the amount-in-controversy for jurisdictional purposes.

In summary, the Court finds that the breach of contract damages, the value of the declaratory judgment claim, and the potential, recoverable attorney's fees in the amount of $10,000 for each plaintiff are properly included in a determination of the amount-in-controversy. The Court finds, by a preponderance of the evidence, that DAKDT's damage claim for purposes of calculating the amount-in-controversy is $76,500, F&C Service's damage claim is $104,500, Nitro-Green's damage claim is $34,750, and Wade Grove's claim for damages is $135, 668.90. Thus, all of the Plaintiffs except Nitro-Green have claims that exceed $75,000 and independently meet the amount-in-controversy requirement. Based on the foregoing, the Court finds, by a preponderance of the evidence, that it has subject matter jurisdiction over the claims of DAKDT, F&C Services, and Wade Grove.

**B.**     **SUPPLEMENTAL JURISDICTION FOR NITRO-GREEN**

The Plaintiffs also argue that supplemental jurisdiction should be exercised over the claims that do not independently meet the amount-in-controversy requirement because: (1) there is at least one Plaintiff whose claim meets the requisite amount-in-controversy, and (2) the Plaintiffs' claims arise out of the same case or controversy.

A district court has supplemental jurisdiction over claims that independently invoke subject matter jurisdiction if they are so related "that they form part of the same case or controversy under Article III of the United States Constitution." 18 U.S.C. § 1367(a). A federal court in a diversity case may exercise supplemental jurisdiction over the claims of plaintiffs who do not independently meet the amount-in-controversy requirement, as long as at least one named plaintiff satisfies jurisdictional requirements and those additional plaintiffs' claims are part of the same "case or controversy" as the plaintiff's claim that do meet the amount-in-controversy requirements. Exxon Mobil Corp. v. Allapatttah Servs., Inc., 545 U.S. 546, 550 (2005)(abrogating Trimble v. Asarco, Inc., 232 F.3d 946 (8th Cir. 2000)).

For supplemental jurisdiction purposes, a claim is part of the same "case or controversy" if it arises from the same "common nucleus of operative fact." See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). A plaintiff's claim is found to arise from the same "common nucleus of operative fact" if the "claims are such that he would ordinarily be expected to try them all in one judicial proceeding." Id; see also Southern Council of Industrial Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996).

Having found that diversity jurisdiction was proper as to DAKDT, F&C Services, and Wade Grove, the Court must determine whether Nitro-Green's claim arises out of the same case or

12

controversy as the other three claims.  Determining whether a case is a part of the same "case or controversy" for supplemental jurisdiction purposes  is a fact-intensive inquiry.  Some courts have found that claims are part of the same case of controversy where there is a single wrong by a party and arising out of a connected series of transactions which give rise to the relief sought.  <u>Roe v. Little Co. of Mary Hosp.</u>, 800 F. Supp. 620, 624 (N.D. Ill. 1992).

In this case, the Court finds that the Plaintiffs' claims all arise out of the same "case or controversy" because the claims arise from the same "common nucleus of operative fact," namely the alleged breach of near-identical licensing agreements by All Green.  The single alleged wrong gives rise to each of the Plaintiffs' claims and request for relief.  The Plaintiffs' claims arose from the same set of facts; the claims involve virtually identical license agreements; there was one breach of contract which affected all of the Plaintiffs when All Green allegedly discontinued performing under the terms of the license agreements; and all Plaintiffs seek the same or similar relief.  It is likely that the Plaintiffs would expect that the near-identical claims would be tried in one judicial proceeding since recovery hinges on whether All Green breached the license agreements. Thus, it is clear that the Plaintiffs' claims derive from the same common nucleus of operative facts.

The Court finds that the Plaintiffs' claims are similar and that they can be properly said to derive from the same "common nucleus of operative fact," and are deemed to be part of the same "case or controversy," for supplemental jurisdiction purposes.  The Court further finds that supplemental jurisdiction over Nitro-Green is appropriate under the facts and circumstances presented.

C.     **PERSONAL JURISDICTION**

Finally, All Green contends that this Court must dismiss the action for lack of personal jurisdiction.  All Green asserts that it does not have a single contact with North Dakota, let alone sufficient minimum contacts with the forum, and it would not reasonably expect to be haled into court. The Plaintiffs contend that the forum-selection clause contained within the licensing agreements requires the parties to litigate any disputes in North Dakota and constitutes consent to personal jurisdiction, thereby allowing the court to bypass any analysis of All Green's contacts with the state. All Green further argues that it did not consent to jurisdiction in North Dakota, but rather is the successor in interest to the license agreements, and that the prior licensor was the one who effectively consented to jurisdiction in North Dakota.

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citing Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990); Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004).  The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d 642, 647 (citations omitted).

As a preliminary matter, it should be noted that this action is in federal court based on diversity jurisdiction. See 28 U.S.C. § 1332(a).  Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court in a diversity action will have personal jurisdiction to the same

14

extent as a state court of the state in which that federal district court sits.  Dean v. Oibas, 129 F.3d 1001, 1003 (8th Cir.1997).  Thus, when a federal court sits in diversity, the analysis for personal jurisdiction involves two steps: (1) the court must determine whether the State of North Dakota would accept jurisdiction under the facts of this case; and (2) the court must determine whether the exercise of jurisdiction comports with constitutional due process restrictions.  Lakin v. Prudential Securities, Inc., 348 F.3d 704, 706-707 (8th Cir. 2003) (citing Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir.1993)).  To satisfy the first step of the jurisdictional analysis, the Court will address the relevant North Dakota provisions governing personal jurisdiction over non-resident defendants.

The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure.  The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process . . . ."  Hansen v. Scott, 645 N.W.2d 223, 230 (N.D. 2003) (citing Auction Effertz, Ltd. v. Schecher, 611 N.W.2d 173 (N.D. 2000); Hust v. Northern Log, Inc., 297 N.W.2d 429, 431 (N.D. 1980)).  The Eighth Circuit has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the two-step test collapses into a single question of whether the exercise of personal jurisdiction comports with due process.  Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Oriental Trading Co, Inc. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir.1994); see Hansen v. Scott, 645 N.W.2d 223, 232 (N.D. 2002) (recognizing that a federal court sitting in diversity may collapse the two-step framework under North Dakota law).

It is well-settled that a party may consent to personal jurisdiction by entering into a contract that contains a forum selection clause. St. Paul Fire and Marine Ins. Co. v. Courtney Enters., Inc., 270 F.3d 621, 624 (8th Cir. 2001).  Due process is satisfied "when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." Dominium Austine Partners, L.L.C., v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001).

All Green entered into several contracts with the Plaintiffs containing a forum-selection clause designating North Dakota as the proper forum. Those contracts provide in pertinent part as follows:

> the license agreement shall be deemed for all purposes to have been made in the State of North Dakota and shall be governed by and construed under and in accordance with the laws of the State of North Dakota. Any cause of action between the parties hereto arising from this Agreement shall be brought only in the District Court, Burleigh County, South Central Judicial District in the State of North Dakota.

See Docket No. 1-2, p. 21; 1-3, p. 21; 1-5, p. 21; 1-6, p.21; 1-7, p. 12.

All Green argues that it never consented to being sued in North Dakota and, because it does not have minimum contacts with North Dakota, this Court cannot exercise personal jurisdiction. On February 21, 1996, All Green purchased the Nitro-Green franchise system.  Each of the Plaintiff's contracts contained clauses that provide that the license agreements shall "be binding upon the successors and assigns of the parties" and that  "any assignment must also involve an assumption of all responsibilities under this License agreement by the assignee". See Docket No.1-2, p. 22; 1-3, p. 23; 1-5, p. 22; 1-6, p.22.[1]  All Green contractually consented to the exercise of personal jurisdiction by becoming the successor in interest to the license agreements which required litigation in North Dakota.  Because of this, a minimum contacts analysis is irrelevant. See Dominium Austine

---

[1] Wade Grove's license agreement is the only agreement not identical, its license agreement states that "the agreement shall inure to the benefit of and be binding upon the successors and assigns of Grantor except as otherwise specifically provided herein."  Docket No. 1-7, p. 13.

Partners, L.L.C., v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001). The Court finds that it has personal jurisdiction over defendant All Green.

### III.    CONCLUSION

For the foregoing reasons, this Court expressly finds that it has both subject matter jurisdiction and personal jurisdiction over the matter and the parties.  The Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated this 28th day of June, 2007.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

17